# THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JEFFREY WEINSTEIN and LEI SHEN, individually and on behalf of a class of similarly situated individuals, <br><br> *Plaintiffs*, <br><br> v. <br><br> AIRIT2ME, INC., a Florida Corporation, GSI COMMERCE, INC., a Delaware Corporation, and THE TIMBERLAND COMPANY, a Delaware Corporation, <br> *Defendants*. | No. 06 C 0484 <br><br> Judge Wayne R. Andersen |
| GSI COMMERCE, INC., <br><br> *Third-Party Plaintiff* <br><br> v. <br><br> MOBILE INFORMATION ACCESS CORPORATION d/b/a MOBILE INTERACTIVE AGENCY, <br><br> *Third-Party Defendant*. | |

## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Jeffrey Weinstein and Lei Shen, by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 23, respectfully move this Court for an order granting preliminary approval to a class action settlement in this matter, certifying the class for purposes of settlement only, authorizing notice to be sent to the members of the class pursuant to the plan detailed herein, appointing class counsel, and scheduling a final approval hearing.

## I. INTRODUCTION

This proposed class action settlement involves allegations that Defendants made tens of thousands of telephone calls throughout the country in the form of text message advertisements to consumers' mobile telephone devices. In December 2005, Plaintiff Jeffrey Weinstein brought suit on behalf of a nationwide class, alleging that Defendants' marketing campaign that resulted

in the sending of these text messages violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"). In June of 2006, an amended complaint was filed on behalf of Mr. Weinstein that added Plaintiff Lei Shen. After actively litigating this matter for nearly two years, counsel for the Plaintiffs and Defendants The Timberland Company and GSI Commerce, Inc. (the "Defendants") met in person on May 28, 2008, in Chicago, Illinois for mediation with the assistance of the Honorable Richard A. Siebel (ret.).

The parties made significant progress at the mediation and through continued settlement discussions, and were able to reach an excellent settlement. (A true and accurate copy of the Corrected Stipulation of Settlement is attached as Exhibit 1). The settlement provides members of the class with cash payment of $150, a *cy pres* fund of $200,000, and safeguards designed to curb the types of actions alleged by the Plaintiffs. Given the hurdles facing Plaintiffs in this litigation, the results achieved are, at a minimum, fair, reasonable, and adequate, meriting preliminarily approval of the settlement.

Plaintiff thus moves the Court to preliminarily approve the instant settlement, certify the settlement class, and appoint as Class Counsel Jay Edelson and Myles McGuire of KamberEdelson LLC and John G. Jacobs and Bryan Kolton of The Jacobs Law Firm, Chtd. For convenience, a proposed preliminary schedule of events leading to a final approval hearing (the "Settlement Hearing") is provided at the conclusion of this brief.

## II. NATURE OF THE CURRENT LITIGATION

### 1. *The Lawsuit, Investigation, & Settlement*

In December 2005, the Plaintiff Weinstein brought a putative class action against Defendants and other entities in the Circuit Court of Cook County. (*See* Declaration of Jay Edelson ¶ 4, a true and accurate copy of which is attached as Exhibit 2). This action was

2

subsequently removed to this Court on January 26, 2006 and designated case No. 06 C 0484. (Edelson Decl. ¶ 5). On or about June 15, 2006, Plaintiffs filed their First Amended Complaint alleging that Timberland, by and through Defendants GSI and AirIt2Me, engaged in a marketing campaign in which tens of thousands of unsolicited text message advertisements were sent to cellular telephones of consumers throughout the country and stated a single cause of action for violation of the TCPA.

Since the inception of the suit, the parties have been actively litigating this action: discovery has been conducted and Plaintiffs' Motion for Class Certification is fully briefed. (Edelson Decl. ¶ 6). After completing briefing on class certification, the parties requested that the Court hold in abeyance its ruling so that an attempt could be made to resolve the litigation through private mediation. (Edelson Decl. ¶ 7). On May 28, 2008, the parties met for a formal mediation session where Judge Siebel aided them in their negotiations. (Edelson Decl. ¶ 8). Although the parties were unable to reach an agreement at the mediation, their continued negotiations resulted in the instant agreement, filed with the Court on September 4, 2008, for which they presently seek preliminary approval. (*See* Edelson Decl. ¶ 9).

2.  *Defendants' Position*

From the outset of this litigation, each of the appearing Defendants has denied and continues to deny any wrongdoing whatsoever and has denied and continues to deny that their marketing campaign resulted in a violation of the TCPA or any other breach of law or duty. Defendants also deny that Plaintiffs or the class are entitled to any form of damages based on the conduct alleged in this litigation as they maintain that they have meritorious defenses to the claim alleged and were prepared to mount a vigorous defense were the case to proceed. Nonetheless, taking into account the uncertainty and risks inherent in any litigation, Defendants

have concluded that further defense of the action would be protracted, burdensome, and expensive, and that it is desirable and beneficial to them that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions in the parties' agreement.

## III. TERMS OF THE SETTLEMENT

The key terms of the settlement follow:

1.  *Class Definition:* The Class is defined as all persons residing in the United States who, between January 1, 2003 and August 1, 2008, received a text message advertising the sale of goods on Timberland.com.

2.  *Individual Settlement Payments.* Defendants have agreed to pay each class member who submits an approved valid claim form $150. However, if the total amount of approved claims exceeds the $7 million ceiling on the Settlement Fund after payment of claims administration expenses, the fee award, *cy pres* payment, and incentive awards, then each class member with an approved claim will receive a *pro rata* share of the amount of the settlement fund available after payment of such amounts.

3.  *Best Practices & Additional Relief.* In addition to the individual relief to the settlement class provided above, Defendants have agreed to provide the following group and other relief.

    A.  **GSI Commerce Inc.'s Best Practices:** As further set forth in the parties' settlement agreement, prior to undertaking any future marketing campaign involving the mass transmission of promotional text messages, GSI has agreed to circulate to its marketing personnel a copy of the most recent Mobile Marketing Association's Consumer Best Practices Guidelines, to establish training programs designed to insure compliance with those guidelines,

4

and to perform compliance checks in connection with these guidelines to prevent the sort of acts alleged in the litigation.

      **B.** **Payment of Notice and Administrative Fees:** Defendants will pay for the cost of sending the settlement class notice, publication, and any other notice as required by the Court as well as all costs of administration of the settlement out of the settlement fund.

      **C.** **Compensation for the Class Representatives:** In addition to any award under the Settlement, and in recognition of their efforts on behalf of the class, the class representatives, Shen and Weinstein, shall be awarded $10,000 and $5,000, respectively, out of the settlement fund as appropriate compensation for their time and effort serving as the class representatives in this litigation.

      **D.** **Payment of Attorneys' Fees:** Class Counsel have agreed not to seek an award of more than one million seven hundred fifty thousand dollars ($1,750,000) for attorneys' fees and expenses from the settlement fund, with any amount sought by Class Counsel being subject to Defendants' objections to the Court and the Court's approval.

      4. *The Release.* Upon the effective date of the settlement, the Plaintiffs, on behalf of themselves and the settlement class, will provide the release of all claims regarding the alleged sending of text message advertisements to the Settlement Class for goods for sale at Timberland.com that were, or could have been alleged, or asserted in the Action relating to such text messages, belonging to Plaintiffs against The Timberland Company, GSI Commerce, Inc., AirIt2Me, Inc., a dissolved Florida Corporation, and Mobile Information Access Corporation d/b/a Mobile Interactive Agency and any and all of their present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors,

managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and Persons, firms, trusts, corporations, officers, directors, other individuals or entities in which The Timberland Company, GSI Commerce, Inc., and AirIt2Me, Inc., has a controlling interest or which is related to or affiliated with any of them, or any other representatives of any of these Persons and entities.

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Prior to granting preliminary approval of a settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *See Manual for Complex Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court may certify a class when the plaintiff demonstrates that the proposed class and proposed class representatives meet these prerequisites: numerosity, commonality, typicality, and adequacy of representation as well as one of the three provisions of Rule 23(b). Fed. R. Civ. P. 23; *see also Maxwell v. Arrow Financial Services, LLC*, No. 03 C 1995, 2004 WL 719278, *2 (N.D. Ill., March 31, 2004). After meeting the strictures of Rule 23(a), the plaintiff must then demonstrate that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). In determining whether to certify a class, the Court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). In this case, each of the prerequisites are met.

### 1. *The Requirement of Numerosity Is Satisfied*

The numerosity prerequisite is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement the Plaintiff need

6

not demonstrate the exact number of class members, but must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (ND. Ill 2006). In fact, "Courts have found this element satisfied when the putative class consists of as few as 10 to 40 members." *Maxwell*, 2004 WL 719278 at *2 (internal citations omitted). However, classes that number in the thousands "clearly" satisfy the numerosity requirement. *See e.g., Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989).

In this case, documents produced in discovery indicate that the proposed settlement class exceeds 40,000 persons. (Edelson Decl. ¶ 10). Accordingly, the proposed class is so numerous that joinder of their claims is impracticable.

### 2. *The Requirement of Commonality is Satisfied*

The second threshold to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This element is met where a "common nucleus of operative fact" exists, even if as to one common question. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Further, where "a defendant has allegedly directed standardized conduct toward the putative class members," the commonality requirement is satisfied. *Maxwell*, 2004 WL 719278 at *3.

As alleged in this case, all class members share a claim that arose out of the same activity of the Defendants, is based on the same legal theory, and implicate the following common questions or issues of fact: whether the text messages they received from the Defendants are both covered by, and violative of, the TCPA; whether the Defendants used an automatic telephone dialing system to transmit the text messages at issue; and whether the class members are entitled to statutory damages as a result of this conduct. In addition, common questions for the

7

settlement include whether the settlement is fair and what is the proper form of notice. The commonality requirement is therefore met.

### 3. *Plaintiffs' Claims Are Typical of The Claims of the Class*

Rule 23 next requires that class representatives have claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). This prerequisite requires that the claims of the named plaintiffs stem from the same course of conduct that gave rise to the claims of the class and that those claims rest on the same legal theory. *Rosario*, 963 F.2d at 1018; *Maxwell*, 2004 WL 719278 at *4. However, "[t]ypical does not mean identical, and the typicality requirement is liberally construed." *Gasper v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

In this case, the Plaintiffs and the proposed class members all received text messages as a result of the Defendants' marketing campaign. As a result of this conduct, the Plaintiffs and the proposed class have alleged that this conduct violated the TCPA, which would provide identical statutory damages to all settlement class members. Accordingly, the Plaintiffs' claims are typical of those of the class and Rule 23(a)(3) is satisfied.

### 4. *The Requirement of Adequate Representation is Satisfied*

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor mandates that "both the class representative and counsel for the named plaintiff must be able to zealously represent and advocate on behalf of the class as a whole." *Maxwell*, 2004 WL 719278 at *5. The class representatives must not have "antagonistic or conflicting claims with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* (internal quotation marks and citation

8

omitted).

In the instant case, Plaintiffs' interests are not antagonistic, but rather are fully congruent with the interests of other class members, and their pursuit of this matter has demonstrated that they will be zealous advocates for the class. Similarly, Plaintiffs' counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class action lawsuits involving cellular telephone technology that are similar in size, scope and complexity to the present case. In fact, Class Counsel have been found suitable class counsel in the first "text spam" case settled under the TCPA that also resulted in $150 cash payments to class members. (*See* resumes of KamberEdelson LLC and The Jacobs Law Firm, Chtd., true and accurate copies of which are attached as Exhibit 3). Accordingly, both Plaintiffs and their counsel will adequately represent the class.

### 5. *The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)*

Once the subsection (a) prerequisites are satisfied, the Federal Rules of Civil Procedure further require that that one of the three requirements of Rule 23(b) be satisfied. Rule 23(b)(3) provides that a class action can be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3); *see also Maxwell*, 2004 WL 719278 at *5.

#### A. **Common Issues Predominate**

The predominance requirement is generally satisfied where a "common nucleus of operative facts" exists. *Maxwell*, 2004 WL 719278 at *5. Class certification is not defeated even if there is some possibility that "separate proceedings of some character will be required to

9

determine the entitlements of the individual class members to relief." *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). While the common issues must predominate, they "need not be exclusive." *Maxwell*, 2004 WL 719278 at *5; *see also Pleasant v. Risk Mgmt. Alternatives, Inc.*, No. 02 C 6886, 2003 WL 22175390, at *5 (N.D. Ill. Sept. 19, 2003) (certifying class where "the central factual inquiry will be common to all" the class members); *Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239, 242 (N.D. Ill. 2001) (finding predominance met in class action where liability is predicated on the same legal theory and the same alleged misconduct).

In this case, the common questions set forth above are at the heart of the litigation. The class members' claims—as well as those of the named Plaintiffs—all arise from the Defendants' marketing campaign, which resulted in text messages being sent to the class in precisely the same manner and that may entitle the class to identical statutory damages. As such, the common questions that result clearly predominate over any individual issues that may exist.

### B. This Class Action is a Superior Method for the Adjudication of the Controversy

The instant class action is superior to any other method available to fairly and efficiently adjudicate the class members' claims. The inquiry into whether the class action is the superior method for a particular case is viewed "from the standpoint of efficiency." *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545, 547 (N.D. Ill. 1972). A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278 at *6; *see also Amchem*, 521 U.S. at 615 (stating that the "very core of the class action mechanism is to overcome the problem that small recoveries do not provide an incentive for any individual to bring a solo action prosecuting his or her rights").

10

In this case, absent a class action, most members of the class would find the cost of litigating their claims—each of which is statutorily limited to $500 by the TCPA—to be prohibitive and such multiple individual actions would be judicially inefficient. Also, because the action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 (citation omitted) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"). Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

## V. THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . .[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, proposed class counsel have extensive experience in prosecuting class actions and other complex litigation of a similar nature, scope, and complexity. (*See* Exhibit 3). Proposed class counsel have intimate knowledge of the law in this field and has been a pioneer in the field of consumer class actions involving cellar telephone technology. In fact, members of proposed class counsel have been invited by the United States Senate to provide its comments concerning the proposed Do Not Text Act of 2008 dealing with text message spam. (Edelson Decl. ¶ 11). Further, proposed class counsel have diligently investigated, prosecuted,

11

and dedicated substantial resources to the investigation of the claims at issue in the action, and has successfully negotiated the settlement of this matter to the benefit of the class. (Edelson Decl. ¶ 12). Accordingly, the Court should appoint Plaintiffs' counsel to serve as class counsel for the proposed class pursuant to Rule 23(g).

## VI. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court." The procedure for review of a proposed class action settlement is a well-established two-step process. Alba & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds*; David F. Herr, *Annotated Manual for Complex Litigation*, § 21.632 (4th ed. 2004). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (quoting *Manual for Complex Litigation*, §30.41 (3rd Ed.)); *Armstrong*, 616 F.2d at 314; *Kessler v. Am. Resorts Int'l*, 05 C 5944, 2007 WL 4105204 at *4 (N.D. Ill. Nov. 14, 2007). This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Armstrong*, 616 F.2d at 314. The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual for Complex Litigation*, § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39.

12

There is a strong judicial and public policy favoring the settlement of class action litigation and such a settlement should be approved by the Court after inquiry into whether the settlement is "fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler*, 2007 WL 4105204 at *5 (citing *Armstrong*, 616 F.2d at 314). The factors ultimately to be considered by the Court are: (1) the strength of the plaintiffs' case compared to the amount of the settlement offer; (2) an assessment of the likely complexity of a trial; (3) the length and expense of the litigation; (4) the amount of opposition to settlement among affected parties; (5) the opinion of competent counsel; and (6) the stage of the proceedings and amount of discovery completed at the time of settlement. *Id.* (citing *Isby*, 75 F.3d at 1199). However, there is a strong initial presumption of fairness that attaches to a proposed settlement where, as here, the agreement was the result of arms' length negotiations by experienced plaintiffs' counsel who have engaged in adequate discovery to effectively represent the class. *Hispanics United of DuPage Cty v. Village of Addison*, 988 F. Supp. 1130, 1150 n. 6 (N.D. Ill. 1997).

In this case, the settlement reached by the parties should be viewed with a presumption that it is fair. As detailed above, the parties' reached the instant settlement only after mediation facilitated by Judge Siebel and further arms' length negotiation by class counsel skilled in this specialized area of class action litigation after engaging in substantial discovery into the claims of the class. (Edelson Decl. ¶ 13). Plaintiffs' counsel are confident in the strength of the claim alleged and believe it is likely that they would ultimately prevail at trial; however, their experience imparts the wisdom that litigation is inherently risky. (Edelson Decl. ¶ 14). When

13

the strengths of the Plaintiffs' claim is weighed against the legal obstacles present in this particular case, combined with the complexity of class action practice, class counsel have concluded that the proposed settlement is in the best interest of class members who are guaranteed immediate cash relief of $150 each, or a lesser *pro rata* share of the settlement, as further specified in the parties' agreement. (Edelson Decl. ¶ 15).

Although entitled to a presumption of fairness, there is no question that the proposed settlement is both "fair, adequate, and reasonable" and "within the range of possible approval" considering the remaining factors as well. The fairness, reasonableness, and adequacy of this settlement are apparent from the substantial immediate cash benefit conferred upon the class, as well as GSI's best practices that will insure future marketing campaigns will not result in acts such as those alleged in this action. The proposed settlement, achieved only after discovery and completed briefing on class certification, is strong given the legal uncertainty associated with Plaintiffs' TCPA claim in this litigation. *Compare Joffe v. Acacia Mortgage Corp.*, 121 P.3d 831 (Ariz. Ct. App. 2006) *with Satterfield v. Simon & Schuster*, No. C 06-2893, 2007 WL 1839807 (N.D. Cal. June 26, 2007). The active litigation of this and similar class actions by proposed class counsel have allowed the parties to conduct extensive investigations into the relevant facts and law. It has allowed the parties to test certain issues through motion practice. In the end, the parties had the necessary information to evaluate the strengths and weaknesses of their cases to mediate and negotiate effectively. Armed with this information, the parties were able to reach the present settlement only after formal mediation, discovery, and numerous proposed draft agreements as the terms were finalized. Given the strength of this settlement, the parties expect no significant opposition to the settlement by class members. Accordingly, the settlement is fair, adequate, and reasonable and warrants preliminary approval from this Court.

14

## VII. THE PROPOSED NOTICE AND FORM OF NOTICE SHOULD BE APPROVED

Where, as in this matter, certification of a settlement class is sought under Rule 23 (b)(3), the substance of the notice must comply with the requirements of describing, in plain language, the nature of the action, the definition of the class certified, the class claims, issues, and defenses, that a class member may enter an appearance through counsel if the member desires, that the court will exclude from the class any member requesting exclusion, and the binding effect of a class judgment on Settlement Class Members. *See* Fed. R. Civ. P. 23(c)(2)(B).

In addition to the substance of the notice, the manner of issuing notice must also satisfy Rule 23 and Due Process, which require the Court to direct "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(b)(3); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). These requirements are easily satisfied by the substance of the proposed notice and manner of its distribution to the class.

First, the proposed notices in this case contain all the required disclosures, are neutral in tone, and neither promote nor discourage the assertion of claims. The notices also provide the settlement class members with a detailed explanation of their options to allow each of them to make an informed decision. The proposed notices, each of which is attached to Stipulation of Settlement attached to this brief, will be distributed to the class in the manner that follows, which has been calculated to give individual notice to as many potential class members as possible. With the aid of a claims administrator, Defendants will cause one-day 1/4th page ad space in Illinois, New York, and/or nationally based newspapers or publications such as: the New York Times, the New York Daily News, the Chicago Tribune, the Chicago Tribune—Red Eye, the Chicago Sun Times, the Washington Post, the Wall Street Journal, and Rolling Stone Magazine,

to be published within forty five (45) days of receipt of Preliminary Approval of this Stipulation.[1] Attached as Exhibits C-1 and C-2 to the Stipulation of Settlement, respectively, are two forms of publication notice substantially in the form in which they may be published depending on space constraints in the above periodicals.

Second, the selected settlement administrator will send notice substantially in the form attached as Exhibit B to the Stipulation of Settlement to each address of potential class members obtained using a commercially reasonable reverse cell phone number look-up service.[2] Each mailed notice will also contain a copy of the claim form, a copy of which is attached to the Stipulation of Settlement as Exhibit A.

Finally, promptly following preliminary approval of the settlement, the settlement administrator shall erect a website to be administered by the settlement administrator which shall include the ability to file claim forms on-line and the text of the proposed internet notice is attached as Exhibit D to the Stipulation of Settlement.

## VIII. PROPOSED PRELIMINARY SCHEDULE

The parties propose the following schedule leading to the fairness hearing for final approval of the settlement:

1. Website Notice And Claim Form Posted by Settlement Administrator: promptly after entry of Preliminary Approval Order (PAO).

2. Publication of one-day 1/4th page ad space in Illinois, New York, and/or nationally based newspapers or publications: Within 45 days after PAO entered.

---

[1] Although the settlement class is nationwide in scope, discovery revealed that the text messages at issue were sent to Persons with wireless phone numbers particular to the States of Illinois and New York. (*See* Stipulation of Settlement ¶ C).

[2] Discovery indicated that Defendants only possess the cellular telephone numbers of the potential class members, but not their addresses. Since the parties wish to avoid any issue as to whether sending notice by text message may potentially violate the TCPA, the Settlement Administrator will attempt to compile the mailing addresses associated with those numbers.

16

3. Mailing of hard copy notice and claim forms to addresses of potential class members obtained through reverse directory lookup. Within 60 days after PAO entered.

4. Deadline for Opt-outs/Objections: 45 days after Notice is mailed.

5. Submission of papers in support of final approval of settlement and in response to objections: 14 days prior to Final Fairness Hearing Date.

6. Final Fairness Hearing. 90 days after Notice is mailed, subject to Court schedule.

7. Deadline for Filing Claims. 45 days after Final Approval.

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) certify the requested settlement class, (2) appoint Weinstein and Shen as class representatives, (3) appoint class counsel as set forth above, (4) preliminarily approve the proposed settlement, (5) approve the form and methods of proposed notice, and (6) order the issuance of the notice and all other actions detailed in the schedule proposed above.

JEFFREY WEINSTEIN and LEI SHEN,
individually and on behalf of a
class of similarly situated individuals,
by their attorneys:

/s/ Myles McGuire

Jay Edelson
Myles McGuire
KamberEdelson, LLC
53 West Jackson, Suite 550
Chicago, Illinois 60604