## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY WEINSTEIN and LEI SHEN, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | No. 06 C 0484 |
| v. | ) ) | Judge Wayne R. Andersen |
| AIRIT2ME, INC., a Florida Corporation, GSI COMMERCE, INC., a Delaware Corporation, and THE TIMBERLAND COMPANY, a Delaware Corporation, | ) ) ) ) ) | |
| *Defendants*. | ) | |

| | |
|---|---|
| GSI COMMERCE, INC., | ) |
| *Third-Party Plaintiff* | ) ) ) |
| v. | ) ) |
| MOBILE INFORMATION ACCESS CORPORATION d/b/a MOBILE INTERACTIVE AGENCY, | ) ) ) ) |
| *Third-Party Defendant.* | ) ) |

### PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PETITION FOR APPROVAL OF ATTORNEYS' FEES AND PLAINTIFFS' INCENTIVE AWARDS

Class Representatives Jeffrey Weinstein and Lei Shen, through Class Counsel, pursuant to Federal Rule of Civil Procedure 23, respectfully move this Court for entry of a Final Judgment and Order of Dismissal With Prejudice, granting final approval of the class action settlement, granting final approval of a *cy pres* award called for therein, awarding Class Counsel reasonable attorneys' fees and expenses, awarding incentive payments to Class Representatives Jeffrey Weinstein and Lei Shen, and dismissing with prejudice the class's claims against Defendants, all as called for by the Settlement. The order Class Counsel seek to have entered is the proposed Final Judgment and Order of Dismissal With Prejudice that is Exhibit F to the Stipulation Of Settlement herein. A separate copy of the proposed order is attached hereto.

## I.     INTRODUCTION

This class action arose over a marketing campaign that resulted in tens of thousands of text message advertisements for www.timberland.com being sent to consumers' cell phones in late 2005.   The suit alleges that this was in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA").   On September 11, 2008, this Court granted preliminary approval to the Stipulation of Settlement ("the Settlement") reached between the Plaintiffs and Defendants The Timberland Company ("Timberland") and GSI Commerce, Inc. ("GSI")(together the "Defendants") after a lengthy mediation with the Honorable Richard A. Siebel (ret.) and followup negotiations between the parties.   The comprehensive notice plan approved by the Court has been successfully carried out, and news articles and press coverage of the settlement have appeared in publications across the country. Notice is now complete and the deadline for the submission of exclusions and objections has passed.   Given the strength of the settlement -- affording class members cash payments of $150, a *cy pres* fund of $200,000, and safeguards designed to curb in the future the types of actions that are the subject of this litigation -- it is not surprising that there has not been a single opt-out or objection.

The novelty of Plaintiffs' claims presented a significant hurdle in this litigation, and the results achieved are, by any measure, "fair, reasonable, and adequate," warranting this Court's final approval of the Settlement.   Plaintiffs further ask the Court to grant their request for attorneys' fees and expense reimbursement in the amount $1,750,000 (representing 25% of the Settlement Fund, exclusive of the value of settlement's injunctive provisions) and for incentive awards to Class Representatives Shen and Weinstein, of $10,000 and $5,000, respectively.

## II.    NATURE OF THE LITIGATION

### 1.    *The Lawsuit, Discovery, & Settlement*

In December 2005, Plaintiff Weinstein brought a putative class action against Defendants

and other entities in the Circuit Court of Cook County, Case No. 05-CH-22196, alleging that the

text message marketing campaign at issue violated the TCPA. (*See* Declaration of Jay Edelson ¶

2, attached hereto.)  The Defendants subsequently filed a joint motion removing the case to this

Court on January 26, 2006, where it was assigned Case No. 06 C 0484. (*See* Dkt. 1.)  On

February 2, 2006, the Defendants each filed Answers to the class action complaint admitting the

existence of the text message marketing campaign, but denying liability and denying that the

campaign violated the TCPA. (*See* Dkt. 11, 14.)  Further, Defendant GSI brought a cross-claim

against AirIt2Me, Inc. and a third-party complaint against Mobile Information Access Corp.

(Dkt. 27, 30, 32.)

On March 8, 2006, the Court approved the parties' proposed discovery plan, discovery

was commenced, and the Court later approved numerous modifications to the initial plan. (*See*

Dkt. 21, 34-36.)  On or about June 15, 2006, Plaintiffs filed their First Amended Complaint

alleging that Timberland, by and through Defendants GSI and AirIt2Me, engaged in a marketing

campaign in which tens of thousands of unsolicited text message advertisements were sent to

cellular telephones of consumers throughout the country and asserted a single cause of action for

violation of the TCPA. (Dkt. 40-41.)  The Defendants answered the First Amended Complaint in

substantially the same manner as the original filing. (*See* Dkt. 43-44.)

After the completion of discovery, the Plaintiffs' filed a Motion for Class Certification,

which was fully briefed. (Edelson Decl. ¶ 3; Dkt. 65-69.)  After completing briefing on class

certification, the parties requested that the Court hold in abeyance its ruling so as to allow the

parties an opportunity to attempt to resolve the litigation through private mediation. (Dkt. 70-71, 75,-77; Edelson Decl ¶ 4.) On May 28, 2008, the parties met for an all-day formal mediation with Judge Siebel in Chicago. (Edelson Decl. ¶ 5.) The parties were unable to reach an agreement at the mediation, but continued negotiations that eventually resulted in an agreement in principle settling the litigation. (Edelson Decl. ¶ 6.)

### 2.    *Defendants' Position*

From the outset of this litigation, each of the appearing Defendants has denied and continues to deny any wrongdoing whatsoever and has denied and continues to deny that their marketing campaign resulted in a violation of the TCPA or any other breach of law or duty. Defendants also deny that Plaintiffs or the class are entitled to any form of damages based on the conduct alleged in this litigation, as they maintain that they have meritorious defenses to the claim alleged and were prepared to mount a vigorous defense were the case to proceed. Nonetheless, taking into account the uncertainty and risks inherent in any litigation, Defendants have concluded that further defense of the action would be protracted, burdensome, and expensive, and that it is desirable and beneficial to them that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions in the parties' agreement.

## III.    TERMS OF THE SETTLEMENT

The key terms of the Settlement follow:

### 1.    *Class Definition:* The Class is defined as all persons residing in the United States who, between January 1, 2003 and August 1, 2008, received a text message advertising the sale of goods on Timberland.com. (Dkt. 80, ¶ 1.32.)

### 2.    *Individual Settlement Payments.* Defendants have agreed to pay each class member who submits a valid claim form $150. However, if the total amount of approved claims

exceeds the $7 million Settlement Fund after payment of notice and claims administration expenses, the fee award, *cy pres* payment and incentive awards, then each class member with an approved claim will receive a *pro rata* share of the amount of the Settlement Fund available after payment of such amounts. (Dkt. 80, ¶¶ 1.34, 2.2(a)

    **3.**    *Best Practices & Additional Relief.* In addition to the individual relief to the settlement class provided above, Defendants have agreed to provide the following group and other relief.

    **A.**    **GSI Commerce Inc.'s Best Practices:** Before undertaking any future marketing campaign involving the mass transmission of promotional text messages, GSI has agreed to circulate to its marketing personnel a copy of the most current Mobile Marketing Association's Consumer Best Practices Guidelines (*see* MMA's Consumer Best Practices Guidelines, Version 3.3, available at www.mmaglobal.com/bestpractices.pdf, last visited November 18, 2008.), to establish training programs designed to insure compliance with those guidelines, and to perform compliance checks in connection with these guidelines to prevent the sort of acts alleged in the litigation. (Dkt. 80, ¶ 2.1.)

    **4.**    **Payment of Notice and Administrative Fees:** Defendants have paid for the cost of the Settlement Administrator's preparing and mailing the settlement class notice (and claim form), newspaper publication in a variety of publications, the maintenance of a website dedicated to this settlement (where, *inter alia*, class members can file claim forms online), as well as all costs of administration of the settlement out of the Settlement Fund. (Dkt. 80, ¶ 4.4.)

    **5.**    **Cy Pres Award:** The parties agreed, and the Court preliminarily approved, that a cash contribution should be made *cy pres* from the Settlement Fund to a charitable institution, St.

Martin de Porres' House of Hope in Chicago, Illinois. Class Counsel request that the Court give final approval to that agreement of the parties.

   **6.**   <u>**Incentive Awards for the Class Representatives**</u>: In addition to any award under the Settlement, and in recognition of their efforts on behalf of the class, the parties agreed upon appropriate incentive award payments to the Class Representatives. (Dkt. 80, ¶ 8.4.) Class Counsel request that the Court approve the agreement that the class representatives, Shen and Weinstein, be granted incentive awards of $10,000 and $5,000, respectively, to be paid by Defendants out of the Settlement Fund as appropriate compensation for their time and effort serving as the class representatives in this litigation.

   **7.**   <u>**Payment of Attorneys' Fees And Expenses**</u>: Class Counsel have agreed to limit any request for fees and expenses to one million seven hundred fifty thousand dollars ($1,750,000) to be paid from the Settlement Fund, with any amount sought by Class Counsel being subject to Defendants' objections to the Court and the Court's approval. The parties have agreed that neither side will appeal the Court's decision on reasonable attorneys' fees and expenses. (Dkt. 80, ¶ 8.1.)

   **8.**   <u>**The Release**</u>: Essentially, if the Court grants final approval to the settlement, the Plaintiffs and the settlement class will release all claims against The Timberland Company, GSI Commerce, Inc., AirIt2Me, Inc., a dissolved Florida Corporation, and Mobile Information Access Corporation d/b/a Mobile Interactive Agency and their related affiliates regarding the sending of text messages advertising goods for sale at Timberland.com that were, or could have been asserted in the litigation relating to such text messages. (Dkt. 80, ¶ 3.2.)

## IV. THE SETTLEMENT WARRANTS FINAL APPROVAL

Under Federal Rule of Civil Procedure 23(e), "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues or defenses of a certified class" and such approval may occur "only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." Fed. R. Civ. P. 23.

There is a strong judicial and public policy favoring the settlement of class action litigation and such settlements should be approved by the Court after inquiry into whether a settlement is "fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 786 F.2d 884, 888-89 (7th Cir. 1985)). The well-settled factors to be considered by the Court to evaluate the final fairness of a class action settlement are: (1) the strength of the plaintiffs' case compared to the amount of the settlement offer; (2) an assessment of the likely complexity, length, and expense of continued litigation; (3) an evaluation of the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and amount of discovery completed at the time of settlement. *Synfuel Techs., Inc. v. DHL Express, Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citing *Isby,* 75 F.3d at 1199); *see also Culvahouse v. City of LaPorte*, No. 06-cv-313, 2008 WL 2038396, at *3 (N.D. Ind. May 12, 2008)  In the instant case, each of the factors militates in favor of approving the settlement.

### 1. *The Strength of the Plaintiffs' Case Compared to the Settlement Amount*

The first factor—the strength of the Plaintiffs' case balanced against the amount of the settlement—is the most important in evaluating the fairness of a class action settlement. *Synfuel*, 463 F.3d at 653 (quoting *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)).  To conduct this analysis, the "Court must evaluate the settlement amount

against an estimated range of possible outcomes in the absence of settlement (which will

necessarily be a 'ballpark valuation')." *Culvahouse*, 2008 WL 2038396, at *3 (citing *Synfuel*,

463 F.3d at 653).

Class Counsel are confident in the strength of the Plaintiffs' TCPA claim; however, they

are also cognizant of the legal uncertainty in this litigation that that would be present absent this

Settlement. There is considerable support for Plaintiffs' argument that the text message

campaign at issue in this litigation is covered by the TCPA, which pursuant to 47 U.S.C.

227(b)(1)(A)(iii) allows for statutory damages of $500 per violation. *See Joffe v. Acacia*

*Mortgage Corp.*, 121 P.3d 831 (Ariz. Ct. App. 2006) *cert. denied sub nom. Acacia Mortg. Corp.*

*v. Joffe,* 127 S. Ct. 934 (2007)*; see also In the Matter of Rules and Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014 , 14115, 165, 2003 WL

21517853 (2003) (stating that the TCPA prohibition on unsolicited calls "encompasses both

voice calls and text calls to wireless numbers including, for example, short message service

(SMS) calls provided the call is made to a telephone number assigned to such service").

However, there is also authority, currently being appealed by Class Counsel to the United States

Court of Appeals for the Ninth Circuit, that calls into question the applicability of the TCPA in

the present context. *See Satterfield v. Simon & Schuster*, No. C 06-2893, 2007 WL 1839807

(N.D. Cal. June 26, 2007)(granting summary judgment to defendants in a similar TCPA claim,

and *inter alia,* refusing to give deference to the FCC Rules and Regulations referred to above)*.*

Class Counsel believe that their understanding of the applicable substantive law is correct, but

realize that it is (and has been) subject to differing interpretation.

Accordingly, Plaintiffs were presented with a situation where continued litigation and

trial, saddled with their inherent uncertainties, could result in: (1) a denial of plaintiffs' then-

pending class certification motion, whereby class members would get nothing; (2) a verdict
where class members could receive the full $500 statutory penalty; (3) a finding that the TCPA
does not apply and class member get nothing; or (4) a verdict for Defendants at trial and class
members get nothing. Given the immediate and substantial cash and injunctive relief being
offered in the Settlement compared to the real, although hopefully unlikely, possibility of zero
recovery, Plaintiffs and Class Counsel accepted the settlement believing it to be fair, reasonable,
adequate, and in the best interests of the class. (Edelson Decl. ¶ 7.) Accordingly, this factor
favors this Court's granting final approval of the Settlement. *Retsky Family Ltd P'ship v. Price
Waterhouse*, No. 97-cv-7694, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) (finding that
"immediate and substantial recovery favors a determination that the proposed settlement is fair,
reasonable and adequate."); *see also Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d
677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to
risks and costs of trial).

    **2.**    *Likely Complexity, Length And Expense of Continued Litigation*

    The next factor this Court must consider is the complexity and expense of litigating of
this matter. *Isby*, 75 F.3d at 1199. Final approval of a settlement is proper where "class action
litigation is substantively and procedurally complex, and much time would have elapsed before
the case could proceed to trial." *Magone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001)
(citing *Isby*, 75 F.3d at 1199). "The Court should consider the vagaries of litigation and compare
the significance of immediate recovery by way of the compromise to the mere possibility of
relief in the future, after protracted and expensive litigation. In this respect, it has been held
proper to take the bird in hand instead of a prospective flock in the bush." *Lipuma v. Am. Express*

*Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (citing *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993).

In the absence of the Settlement and assuming Plaintiffs prevailed on the question of class certification, it is certain that the expense, duration, and complexity of the protracted litigation that would result from the nature of the claim alleged here would be substantial. Significant costs would be incurred were this matter to proceed to trial, including expenses for expert witnesses, technical consultants, and the myriad of other costs necessitated by the trial of a class action. Further, evidence and witnesses from across the country would have to be assembled. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal. As such, the substantial relief provided to the class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal.

### 3. *The Amount Of Opposition To Settlement*

The class members' reaction is an important factor in the Court's determination of the fairness, adequacy, and reasonableness of the settlement. *See e.g. Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "In evaluating the fairness of a class action settlement, . . . overwhelming support by class members is strong circumstantial evidence supporting the fairness of the settlement." *Magone*, 206 F.R.D. at 227 (citing *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2000)). Further, the lack of objectors coming forward to challenge the settlement favors finding the settlement fair and reasonable. *See Am. Civil Liberties Union v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002). In this case, the court-approved notice procedures utilized by the parties and the substantial publicity generated by it yielded no objections or requests for exclusion. In this day of

professional objectors and cynicism about class actions, the fact that there is not a single request

for exclusion and not a single objection says much about the appropriateness of granting final

approval to the Settlement.

4.    *The Opinion Of Competent Counsel*

The next factor required for consideration is the opinion of competent counsel that the

settlement is fair, reasonable, and adequate. *Isby,* 75 F.3d at 1200. There is a strong

presumption of fairness that attaches to a settlement where, as here, the agreement was the result

of arms' length negotiations by experienced plaintiffs' counsel who have engaged in adequate

discovery to effectively represent the class and conducted before a highly regarded mediator

such as Judge Siebel. *Hispanics United of DuPage Cty v. Village of Addison*, 988 F. Supp. 1130,

1150 n. 6 (N.D. Ill. 1997). In fact, significant weight is accorded the unanimous strong

endorsement of a settlement by well-respected plaintiffs' counsel. *In re Mexico Money Transfer*

*Litig.*, 164 F. Supp. 2d at 1020.

In this case, Class Counsel are respected members of the legal community, have regularly

engaged in major complex litigation, and have had extensive experience in consumer class action

lawsuits involving cellular telephone technology. (*See* Edelson Decl. ¶ 8; Jacobs Affidavit ¶7.)

Class Counsel have intimate knowledge of the law in this field and have been pioneers in the

field of consumer class actions involving cellular telephone technology and have secured

settlements in several nationwide class actions involving unauthorized cell phone charges.

(Edelson Decl. ¶ 8.) As a result, certain of Class Counsel have been invited by the United States

Senate to provide comments concerning the proposed Do Not Text Act of 2008 dealing with text

message spam. (*Id.*) Further, Class Counsel have diligently investigated, prosecuted, and

dedicated substantial resources to the investigation of the claims at issue in the action, and have

successfully negotiated, with the assistance of Judge Siebel, the settlement of this matter to the benefit of the class. (*Id.*) Accordingly, Class Counsel's strong endorsement of the settlement weighs in favor of its approval.

> **5.** *The Stage of The Proceedings And Amount of Discovery Completed*

The final factor to be considered in analyzing the fairness, reasonableness, and adequacy of a settlement is the stage in the proceedings and the amount of discovery completed at the time the settlement was reached. *See Isby*, 75 F.3d at 1200. Approval of a settlement is proper where "extensive and thorough" discovery and investigation have been conducted and where settlement was reached early in the litigation. *Id.* at 1199; *see also Magone*, 206 F.R.D. at 226. As noted above, Class Counsel have actively litigated this and similar class actions that have allowed the parties to conduct extensive investigations into the relevant facts and law. This and the other litigation gave context to the substantial discovery that was conducted in this matter. In the end, the parties had the necessary information to evaluate the strengths and weaknesses of their cases to mediate and negotiate effectively. Equipped with this information, the parties were able to reach the present settlement only after formal mediation, discovery, and numerous proposed draft agreements as the terms were finalized. Accordingly, this and the other factors each favor this Court entering final approval of the settlement.

## V.     THE NOTICE PLAN DIRECTED TO THE CLASS COMPORTS WITH DUE PROCESS

Rule 23 requires the class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). "Neither Rule 23 nor due process requires receipt of actual notice by all class members; rather, notice should be mailed to the last known addresses of those who can be indentified and publication used to notify the others." *Magone*, 206 F.R.D. at 232 (citing Alba &

Conte, 2 *Newberg on Class Actions*, § 8.02 (3d ed. 1992); *see also Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985) (noting that "Rule 23 does not require defendants to exhaust every conceivable method of identification").

Cognizant of the potential difficulty in properly giving notice to the Class when the only information known about the potential class members was a partial list of their cellular phone numbers, the Parties retained, and the Court approved, Rosenthal and Company ("Rosenthal"), a professional Claims Administrator specializing in administering and marketing class action settlements as Settlement Administrator in this case. After being apprised of the nature of the litigation and the limited information available to identify potential class members, Rosenthal developed a comprehensive notice plan specifically designed to reach as many members of the class as possible. (*See* Declaration of John Keane, ¶¶ 2-3, attached hereto.)

The notification plan implemented by Rosenthal and approved by the Court included: (1) direct mailed notice to all class members identified by a "reverse" address search using a list of all cell phone numbers in the Parties' possession to which the allegedly offending text message was sent; (2) published notice in multiple major market newspapers in the two cities targeted by the Defendants' text message marketing campaign (New York City and Chicago) as well as the National edition of *USA Today*; and (3) the erection of a web page providing information about the settlement and how to obtain claim forms. Additionally, there was a press release concerning the Settlement issued via the Business Wire. (Keane Decl. ¶¶ 4-9, 11; Edelson Decl. ¶ 9.) In addition to the notice contemplated by the parties, the news of the settlement was independently and widely reported in numerous publications across the country and on the internet. (Edelson Decl. ¶ 10.)

Rosenthal arranged for the publication of the approved summary notice of the Settlement

in the National edition of USA Today, the Chicago Sun Times, Chicago Tribune Red Eye, New

York Post and the New York Daily News. (Keane Decl. ¶ 9.) The summary notice included a

the Settlement website address, a toll free number and mailing address from which Class

Members could request a Claim Form. (Keane Decl. ¶ 9.) As part of the notice component,

Class Counsel distributed a press release—the text of which was negotiated and agreed upon by

the Parties and included the web address of the settlement page—via the Business Wire National

Circuit on September 19, 2008. (Keane Decl. ¶ 8; Edelson Decl. ¶ 9.) Business Wire posts full-

text news releases to major Internet portals, search engines, web sites, financial services and

database systems. (Edelson Decl. ¶ 9.) Business Wire news is also carried by major syndicators

and is posted to industry, newspaper and other targeted websites providing comprehensive direct

reach to consumers, investors, media and other target audiences. (*Id.*) The average national

distribution reaches approximately 25,000 destinations, which include internet sites, trade

publications, newspapers, broadcasting stations and wire services. (*Id.*) Notice by press release

is often considered a form of widely circulated notice to the class. *See Greebel v. FTP Software,*

*Inc.*, 939 F. Supp. 57, 62 -63 (D. Mass. 1996) (finding a press release distributed on the Business

Wire satisfied the PSLRA, 15 U.S.C. § 78 *et seq.*'s requirement that "widely circulated"

publication be given to the class).

  Each of these notices and the press release directed class members to the Court-approved

"long form" notice that was published to the Internet by Rosenthal at

www.TimberlandTextSettlement.com on or about September 13, 2008 (and remains posted

through the present). (Keane Decl. ¶ 9; Edelson Decl. ¶ 11.) These notices also contained a toll-

free number answered by trained staff members from Rosenthal knowledgeable in the terms of

the settlement. (Keane Decl. ¶ 10.) In sum, the notice was provided to all those reasonably

ascertainable by available information and in the best method practicable to all others and comports with Due Process and Rule 23.

## VI.   ATTORENYS' FEES & INCENTIVE AWARDS

1.   *The Requested Attorneys' Fees are Reasonable Whether Calculated Under Either the Percentage of the Benefit Analysis or the Lodestar Method.*

In deciding appropriate fee in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*")); *see also Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) (finding that in common fund cases, "the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case"); *In re Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorney's fee . . . is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation . . . .   In other words the object is to simulate the market . . . class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client"); *Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ("Although is it impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation . . . .") (citing *Synthroid I*, 264 F.3d at 719)).

This rule "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton*, 504 F.3d at 692, (citing *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)

(class lawyers who secure fund are entitled to payment from the fund to avoid unjustly enriching those who benefit from class counsel and the class representatives' efforts).

Accordingly, although awarding attorneys' fees based on a percentage of the recovery or Class Counsel's lodestar remains within the discretion of the district court, *Florin v. Naitonsbank of Georgia, N.A.*, 34 F.2d 560, 566 (7th Cir. 1994), "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class" especially where the percentage accurately reflects the market. *Williams v. Gen. Elec. Capital Auto Lease*, 1995 WL 765266, *9 (N.D. Ill. 1995); *see also Long v. Transworld Airlines*, No. 86 C 7521,1993 WL 121824, at *1 (N.D. Ill. April 19, 1993); *Sutton*, 504 F.3d at 693 (directing district court on remand to consult the market for legal services so as to arrive at a reasonable percentage) (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (stating that in determining attorneys' fees, "we have consistently looked to the marketplace as our guide to what is 'reasonable'")).

The contingent nature of the fees here supports an award based on the common benefit approach. The fee agreements between Class Counsel and the Class Representatives are contingent in nature. (Edelson Decl. ¶ 12). It has been stated that in commercial, non-class litigation, attorneys regularly negotiate contingent fee arrangements, which result in a fee of between 30% and 40% of the recovery. *See Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986); *Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77 C 39, 1984 WL 21981, *15 (N.D. Ill. Sept. 14, 1984); *see also* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986) (explaining established practice to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning[1] contingency cases).

---

[1] That this case settled is irrelevant, as courts have made clear that if, by their skill and determined efforts, plaintiffs' counsel ultimately secure a settlement, that fact does not diminish

Additionally, Class Counsel assumed a substantial risk of non-payment given the novelty of the action and the Defendant's position that it stood ready at all times to vigorously defend the lawsuit. (Edelson Decl. ¶ 13). This is the first substantial settlement to provide private recovery under the TCPA for alleged commercial text message spam. (Edelson Decl. ¶ 14.) In light of the significant likelihood that Class Counsel (and Class Members) could have ultimately recovered nothing, Class Counsel had every incentive to litigate this matter in the most efficient manner possible.

The magnitude of the recovery for the Class Members is further suggestive of an award based on the common benefit approach. Class Members who submit valid claims are entitled to $150 cash payments, or their *pro rata* share of the $7,000,000[2] Settlement Fund in the event the approved claims, attorneys' fees, and $200,000 *cy pres* award to St. Martin de Porres exceed the total amount of the fund. Although the TCPA provides for $500 in statutory damages for proven violations, as stated above there was surely no guarantee of recovery here. Additionally, in the event a future campaign is contemplated, adoption of industry best practices and training to ensure compliance with those practices is required. These tangible and substantial benefits are a far cry from "coupon settlements" that have been used in the past to justify fee awards.

Finally on this point, that none of the Class members have objected to the amount of the

---

the risk they assumed at the case's inception. *See Skelton*, 860 F.2d at 258 (7th Cir. 1988) ("The point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them.")

[2] Absent extenuating circumstances, fees are based on the benefit made available to the class, as opposed to the amounts actually claimed. This approach promotes the deterrence goals of class actions. *See, e.g., Boeing*, 444 U.S. at 480; 2 Newberg on Class Actions § 1.18 (3d Ed.1992) ("[I]t is now settled that class counsel may seek a fee award based on the total potential benefit to the class, rather than being limited by the total amount of claims actually exercised by class members"); *accord Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1296-97 (11th Cir. 1999); *see also* Hailyn Chen, *Attorneys' Fees and Reversionary Fund Settlements in Small Claims Consumer Class Actions*, 50 U.C.L.A. L. REV. 879, 892 (2003) ("Limiting class counsel to a fee based on a percentage of what class members actually claim will, in many instances, result in a fee that is so small as to prevent class action attorneys from pursuing such cases . . . .")

requested fees is testament to the reasonableness of the request. The lack of objection to the fee

request is meaningful here because the day has long since passed when class members simply

accepted the amount of proposed fees in an otherwise acceptable settlement. The common

benefit approach is appropriately applied to the instant settlement and the inquiry turns to what

percentage would be appropriate given the market for legal fees.

> **A.** **The Requested Fees Represent at a maximum 25% of the Common Benefit Provided to the Class—a Percentage Well Below Market and the Range that has Been Found Reasonable by the courts.**

Without assigning any value to the non-monetary[3] relief obtained for the Class, the

requested fees amount to 25% of the cash common benefit created under the settlement. Such a

figure is widely recognized as a reasonable percentage—in fact, well below the norm. *See*

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02cv1109, 2004 WL 768658, at

*1 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%)

in a class action in not uncommon"). Indeed, using the market percentage method in the courts

of the Seventh Circuit, as one court has observed, results in awards of attorney's fees "equal to

approximately one-third or more of the recovery." *Goldsmith v. Tech. Solutions Co.*, No. 92 C

4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995); s*ee also In re Mexico Money Transfer*

*Litig.*, 164 F. Supp. 2d 1002, 1033 (N.D. Ill. 2000) (recognizing "the established 30% benchmark

for an award of fees in class actions."); *Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp.

1226, 1251-52 (N.D. Ill. 1993) (awarding 29% of a common fund); *Berger v. Xerox Corp. Ret.*

---

[3] Non-monetary benefits can be considered for purposes of determining fees. *See, e.g., Loring v. City of Scottsdale, Ariz.*, 721 F.2d 274, 275 (9th Cir. 1983) ("The court failed to take into account the present nonmonetary benefit bestowed upon plaintiffs' class by negation of the City's claim to a right of way. On remand the court should consider the total benefits of the litigation to plaintiffs' class."); *Joy Mfg. Corp. v. Pullman Peabody Co.*,742 F. Supp. 911 (W.D. Pa. 1990) (collecting cases); *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) (noting the propriety of using non-monetized injunctive relief to increase the basis for calculating class counsel's fees); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002). In this case, the fact that the size of the fund itself justifies the requested fees obviates the need to calculate the value of the non-monetary component.

*Income Guarantee Plan*, No. 00-584-DRH, 2004 WL 287902, at *2 (S.D. Ill. Jan. 22, 2004)

(finding that 29% of the gross settlement is a reasonable fee award); *Gaskill v. Gordon*, 160 F.3d

361, 362-363 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40%

and that "[s]ome courts have suggested 25% as a benchmark figure for a contingent-fee award in

a class action"); *accord, Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993)

("[I]n common fund cases such as this, we have established 25% of the common fund as the

'benchmark' award for attorney fees.").

Recent consumer class action decisions in other jurisdictions also show that the market

for legal fees elsewhere supports percentages for attorney's fees equal to or greater than the fees

requested here, including:

- *Accounting Outsourcing, LLC v. Verizon Wireless Pers. Communications*, LP, No. 03-161 (M.D. La. Aug. 2, 2007) (awarding attorneys' fees of $2.3 million, equaling 36.5% of common fund of $6.3 million).

- *Montana Land & Mineral Owners Ass'n v. Devon Energy Corp.*, No. 05-30, 2006 WL 1876859 (D. Mont. Aug. 24, 2007) (providing fee award of $1.67 million, equaling 33.33% of $5 million common fund).

- *Russo v. NCS Pearson*, No. 06-1481 (D. Minn. Nov. 30, 2007) (awarding attorneys' fees of $900,000, equaling 31.6% of common fund of $2.85 million).

- *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL 703926, at *3 (S.D.N.Y. March 7, 2007) (awarding attorneys' fees of $861,000, equaling 30.4% of common fund of $1.9 million).

- *Hugley v. Marland Cas. Co.*, No. 06-21428 (S.D. Fla. July 3, 2007) (awarding attorneys' fees of $782,000, equaling 30% of common fund of $2.63 million).

- *In re A Million Little Pieces Litig.*, No. 06-mdl-1771 (S.D.N.Y. Dec. 4, 2007) (awarding attorneys' fees of $783,000, equaling 30% of common fund of $2.35 million).

Recent empirical data analyzing fee awards in securities class actions indicate that "[r]egardless

of case size, fees average 32 percent of the settlement." Denise N. Martin, Vinita M. Juneja,

Todd S. Foster, Fredrick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlement in*

*Shareholder Class Actions?* at 12-13 (NERA 1996). These figures are also in accord with a

Federal Judicial Center Study that found that in federal class actions, median attorney fee awards were in the range of 27% to 30%. Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Federal Judicial Center 1996).

The going rate in the market for class action legal fees clearly suggests a fee substantially in excess of the fee requested here. Nevertheless, Class Counsel specifically agreed to limit their fee request to $1.75 million, and that in no event would the Defendant be required to pay more than that amount in fees and expenses. The stipulation also states this Court's fee decision is non-appealable by either party. Given the constraints imposed by the parties' stipulation, then, a fee award of 25% is well below the market rate and facially reasonable.

**B.      The Requested Fees are Equally Appropriate Under the Lodestar Method.**

The other method used by some[4] courts, the lodestar approach, considers the hours spent by the plaintiffs' attorneys times the lawyers' hourly rates. The total is then adjusted by the use of a multiplier to account for the risks faced, including the "contingent nature of the undertaking and the benefits conferred upon the class," *see, e.g., Ryan*, 274 Ill. App. 3d at 922, as well as injunctive relief, *see, e.g, Staton*, 327 F.3d at 973-74; *Vizcaino*, 290 F.3d at 1049. As provided in the Edelson Declaration and Jacobs Affidavit, Class Counsel's lodestar in the instant case is reflected in the flowing chart:

---

[4] In recent years, the trend toward using the percentage-of-recovery approach has only escalated. "Given the issues likely to arise in computing a lodestar, courts across the country, both federal and state, are retreating from a lodestar analysis in favor of setting common benefit fees at a percentage of the benefit secured, especially in common fund cases." *In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *3 (W.D. La. Oct. 31, 2006) (collecting cases); *Ryan v. City of Chicago*, 274 Ill. App. 3d 913, 923 (1st Dist. 1995) (citations omitted) (noting that the Third Circuit, which developed the lodestar method, has now identified no fewer than nine substantial defects within it); *see also Court Awarded Attorneys Fees, Report of the Third Circuit*, 108 F.R.D. 237, 255-56 (1985)); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 304 (E.D. Pa. 2003) (lodestar encourages inefficient behavior, turns judges into bean counters and creates antagonistic interests between the class and class counsel).

| ATTORNEY (position) | YEARS OF PRACTICE | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| J. Edelson (partner) | 13 years | 152.4 | $495 | $75,438 |
| M. McGuire (partner) | 8 years | 518 | $410 | $212,380 |
| R. Andrews (associate) | 3 years | 114.2 | $300 | $34,260 |
| S. Lezell (associate) | 3 years | 33 | $300 | $9,900 |
| R. Balabanian (associate) | 3 years | 59 | $300 | $17,700 |
| D. Rubin (associate) | 7 years | 2.2 | $335 | $737 |
| J. Blim (of counsel) | 15 years | 162.4 | $475 | $77,140 |
| B. Richman (clerk) | n/a | 19 | $200 | $3,800 |
| B. Davis (clerk) | n/a | 3.5 | $200 | $700 |
| S. Reed (clerk) | n/a | 11 | $180 | $1,980 |
| S.L. Davenport (clerk) | n/a | 2 | $200 | $400 |
| Estimate of future KamberEdelson time | | | | $25,000 |
| J. Jacobs (partner) | 36 years | 225.1 | $550 | $123,805 |
| B. Kolton (associate) | 9 years | 302.6 | $350 | $ 105,910 |
| Amy Schachman (Paralegal) | n/a | 100 | $ 75 | $ 7,500 |
| TOTAL | | | | $ 696,650 |

In light of the novelty and complexity of the issues present here and the amount of work performed, this lodestar is reasonable. The attorney rates are comparable to those charged in the relevant legal market, and, given the risk of non-recovery, Class Counsel had incentive to (and in fact did) minimize duplicative work. (Edelson Decl. ¶¶ 17-18; Jacobs Affidavit. ¶¶ 4-5.) In addition, Class Counsel have incurred costs and out-of-pocket expenses prosecuting this matter in the amount of $ 5,886. (Edelson Decl. ¶ 19; Jacobs Aff. ¶ 6.) Accordingly, Class Counsel's total lodestar (including estimates of additional future time required) and expenses is $702,536.

(Edelson Decl. ¶ 20; Jacobs Aff. ¶ 6.)

As a result, to support the requested fees in this case would require a lodestar multiplier of only **2.51** (and of only **2.49**, when fees and costs are considered). (Edelson Decl. ¶¶ 18-19; Jacobs Aff., ¶ 6.) This is consistent with -- and well below -- multipliers used in other cases, both here and across the nation. *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,* No. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) (approving lodestar multiplier of 15.6); *Conley v. Sears, Roebuck & Co.,* 222 B.R. 181 (D.Mass.1998) (approving lodestar multiplier of 8.9); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 364 F. Supp. 2d 980 (D. Minn. Apr. 08, 2005) (approving lodestar multiplier of 4.7); *In re Merry-Go-Round Enter., Inc.,* 244 B.R. 327 (Bankr. D. Md. Jan 27, 2000) (approving lodestar multiplier of 19.6 multiplier); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 736, n.44 (E.D. Pa. Jun 08, 2001) (finding fee award equivalent to 4.5 to 8.5 lodestar multiplier "unquestionably reasonable"); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 1678 (S.D.N.Y. 1997) (approving lodestar multiplier of 5.5); *In re AremisSoft Corp. Sec. Litig.,* 210 F.R.D. 109 (D.N.J. 2002) approving lodestar multiplier of 4.3); *Di Giacomo v. Plains All Am. Pipeline,* No. H-99-4137, 2001 WL 34633373, at *10-11 (S.D. Tex.. Dec.19, 2001) (approving percentage fee that resulted in multiplier of 5.3); *Deloach v. Philip Morris Cos.,* No. 00CV01235, 2003 WL 23094907 (M.D.N.C. Dec 19, 2003) (multiplier of 4.45); *Ladewig v. Arizona Dept. of Revenue,* 204 Ariz. 352, 63 P.3d 1089 (Ariz.Tax 2003) (holding that "in light of the lengthy delay in recovery, and the high risks assumed by counsel, that a lodestar multiplier of 6 is appropriate"); *Ryan v. City of Chicago,* 274 Ill. App. 3d 913, 654 N.E.2d 483, 211 Ill. Dec. 21 (1st Dist. 1995) (approving fee award of 33% of common fund, which court stated for comparative purposes only, resulted in a multiplier of 4); *Cohn v. Nelson,* 375 F. Supp. 2d 844 (E.D. Mo. 2005) ("courts typically apply a

multiplier of 3 to 5 to compensate counsel for the risk of contingent representation"); *Ramos v. Philip Morris Cos.*, 743 So.2d 24 (Fla. App. 1999) (fee award entailed a multiplier of 5); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (approving fee equaling a multiplier of 3.97, and noting that "in recent years multipliers of between 3 and 4.5 have become common"); *Maley v. Del Global Tech. Corp.* 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("the modest multiplier of 4.65 is fair and reasonable" and "well within the range awarded by courts . . . throughout the country"); *In re Linerboard Antitrust Litig.*, No. 98-5055, 2004 WL 1221350, at *14 (E.D. Pa. Jun 02, 2004) (recognizing that from 2001 to 2003, the average multiplier approved in common fund cases was 4.35); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322, 326-028 (N.D. Ill. 1981) (multiplier of 4.0); *Arenson v. Board of Trade of City of Chicago*, 372 F.Supp. 1349 (N.D.Ill. Feb 11, 1974) ("award of four times the hourly rate of the plaintiffs' attorneys is meant to adequately compensate them for initiating this significant litigation and negotiating such a beneficial settlement for the class"); *In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) (approving lodestar multiplier of 5). This list could be extended considerably, but the point is obvious: the requested lodestar and companion multiplier are eminently reasonable here.

Hence, under either the percentage of the fund method or the lodestar method Class Counsel's fee request is reasonable in this case. More importantly, the requested fee award follows binding Seventh Circuit precedent in that it is accurately reflective of and consistent with -- indeed, is appreciably <u>below</u> -- what the market would award. Accordingly, this Court ought to award the request for attorneys' fees and expenses of $1,750,000.

2. **The Incentive Awards to the Class Representatives are Reasonable and Should be Approved.**

In class action litigation, "[i]ncentive awards are justified when necessary to induce individuals to become named representatives. *Synthroid,* 264 F.3d at 722 (citing *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)). The following factors are considered when determining whether the requested incentive awards are appropriate: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook,* 142 F.3d at 1016. In this case, the efforts of the Class Representatives readily satisfy these elements and support the requested awards. *See Cook, supra,* (affirming approval of $25,000 incentive award where effort of class representative resulted in cash recovery to class of $13 million); *see also Morlan v. Universal Guar. Life Ins. Co.,* No. Civ. 99-274-GPM, 2003 WL 22764868 at *2 (S.D. Ill. Nov. 20, 2003) (approving incentive awards totaling $70,000 including an award of $25,000 and two awards of $20,000 to named class representatives).

Both Shen's and Weinstein's involvement in this action was critical to the ultimate success of the case. Both Shen and Weinstein were actively involved in the prosecution of this matter and their involvement included: independently bringing the alleged violation to the attention of Class Counsel; working with class counsel in the investigation of their claims; appearing for their deposition; and further aiding in discovery including Mr. Weinstein's surrender of the cellular phone on which he received the text message and efforts demonstrating ownership of the phone partially paid for by his employer. Ms. Shen, who at the time was completing law school and applying for associate positions, took considerable personal risk for the benefit of the class by being a named plaintiff in this class action. Further, each has been

interviewed by reporters for stories that aided in notifying others of their rights under the settlement and ensuring that the Settlement was fair, adequate, and reasonable to the other members of the class. But for their participation and willingness to undertake the responsibilities and risks attendant with bringing a representative action, the substantial benefit to the class discussed above would not have resulted. The Plaintiffs therefore request the Court approve the agreed-upon incentive awards of $10,000 and $5,000 to Shen and Weinstein respectively.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant final approval to the Settlement; (2) grant final approval of a *cy pres* award of $200,000 cash payment to St. Martin de Porres' House of Hope; (3) award Class Counsel reasonable attorneys' fees and expenses in the amount of $1,750,000; (4) award Class Representatives Shen and Weinstein incentive awards of $10,000 and $5,000, respectively, all of the foregoing payments to be paid by Defendants from the Settlement Fund in accordance with the terms of the Settlement Agreement; (5) enter an order dismissing the Released Claims with prejudice, and (6) awarding such additional relief the Court deems reasonable and just.

Respectfully submitted,

JEFFREY WEINSTEIN and LEI SHEN,
individually and on behalf of a
class of similarly situated individuals,
by their attorneys:

_____ /s/ Jay Edelson _____                    _____ /s/ John G. Jacobs _____

Jay Edelson                                     John G. Jacobs
Myles McGuire                                   Bryan G. Kolton
KamberEdelson, LLC                              The Jacobs Law Firm, Chtd.
350 North LaSalle, Suite 1300                   122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60654                         Chicago, Illinois 60603